**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRADLEY HARMAN,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:12-cv-02033** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **YORK CITY SCHOOL DISTRICT, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court is Defendants' motion to dismiss Plaintiff's second amended complaint. (Doc. No. 20.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant the motion in part and deny the motion in part.

## I.    BACKGROUND[1]

Plaintiff Bradley Harman, who is Caucasian, was employed by Defendant York City School District as the director of facilities from 2003 until 2012. (Doc. No. 18 ¶¶ 16-18, 154-55.) Plaintiff alleges that, during the course of his employment, African-American school board members, administrators, and staff subjected him "on a regular basis to harassment and degradation" on account of his race. (Id. ¶ 22.) These individuals include Defendants James Morgan and Jeffrey Kirkland, both of whom served on the school board.

In support of his claims, Plaintiff relates the following series of incidents, listed in chronological order. First, during a 2008 executive session of the school board, Beverly Attwater and Hiawatha Powell, African-American members of the school board, stated that a

---

[1] In stating the relevant facts, the Court must accept Plaintiff's factual allegations as true and "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004).

sub-committee on which Plaintiff served was racist, "only hiring white people," and "[d]id not look like our children.'" (Id. ¶¶ 33-35, 37-38.)  After similar comments were made over the course of several months, Plaintiff complained to his immediate supervisors, including former superintendent Sharon Miller.  (Id. ¶¶ 33-36.)

In the fall of 2009, Plaintiff testified against District employee Saleem Kirkland, who is African-American, at the District Justice office.  (Id. ¶¶ 45-46.)  Plaintiff testified that Mr. Kirkland removed District property without authorization.  (Id. ¶ 47.)  As a result, the District suspended Mr. Kirkland without pay, but, at the behest of Defendant Morgan, Ms. Attwater, and Samuel Beard, the former president of the school board, the District reinstated him, awarded him back pay, and removed any reference of the incident from his personnel file.  (Id. ¶¶ 48, 52, 54.) Plaintiff alleges that Ras Dean, an African-American employee whom he supervised, then filed a complaint against Plaintiff regarding his treatment of African-American employees as retaliation for testifying against Mr. Kirkland.  (Id. ¶ 55.)

On June 15, 2010, Defendant Morgan and Mr. Beard contacted the police after Plaintiff removed "a broken and scrap stove and other nominal items" from the District's Ferguson Elementary School.  (Id. ¶¶ 79, 84-86.)  Following an investigation, during which Plaintiff was suspended with pay, Plaintiff was cleared of any wrongdoing and reinstated to his position, but a letter describing the incident was placed in his personnel file.  (Id. ¶¶ 88-91.)  Thereafter, Defendant Morgan requested the York County District Attorney to bring charges against Plaintiff relating to the incident, but no charges were ultimately filed.  (Id. ¶¶ 92-93.)

After Plaintiff had interviewed candidates for the position of plant operator at the District's William Penn High School at some time prior to August 31, 2010, Dolores Penn, the

District's director of human resources, acting at the behest of Defendant Kirkland, instructed Plaintiff to interview additional candidates, including Mr. Dean.[2]  (Id. ¶¶ 108, 111.)  After Plaintiff complied with this demand, Ms. Penn pressured him into hiring Mr. Dean.  (Id. ¶ 113.)  In November 2010, after Plaintiff denied Mr. Dean's request for a pay increase, Mr. Beard "intimidated and bullied" him into granting the request.  (Id. ¶¶ 124, 127-30.)

On November 29, 2010, Plaintiff filed a complaint against the District with the Pennsylvania Human Relations Commission ("PHRC") regarding his suspension in June 2010. (Id. at 38-44.)

In January 2011, Michael Muldrow, an African-American and the District's manager of safety and security whom Plaintiff supervised, in violation of District protocol, requested York City police officers to serve as security guards at a basketball game without receiving Plaintiff's authorization.  (Id. ¶ 137.)  After learning that Mr. Muldrow made the request, Mr. Beard advised Eric Holmes, the acting superintendent, to not discipline him.  (Id. ¶ 140.)  On June 24, 2011, Plaintiff amended his PHRC complaint, which he dually filed with the Equal Employment Opportunity Commission ("EEOC"), including allegations about this incident.  (Id. at 46-51.)

On November 24, 2011, Mr. Dean sent an email to approximately 600 District employees in which he "specifically attacked Plaintiff and accused him of being a racist, showing favoritism, and requested that a grievance be opened against Plaintiff for these actions."  (Id. ¶¶ 150-52.)  Thereafter, the District suspended Mr. Dean for ten days without pay and investigated the allegations Mr. Dean made against Plaintiff.  (Id. ¶¶ 156, 158.)  Due to "extreme anxiety,

_____

[2] Plaintiff does not allege the date on which this incident occurred.  He does, however, reference an August 31, 2010 report allegedly describing the incident.  (Doc. No. 18 ¶ 120.)

depression, and medical issues related to the extreme stress caused by the email and its effects," Plaintiff immediately took time off of work.  (Id. ¶ 155.)  Plaintiff alleges that his "contract was eventually terminated" and that he "was entitled to his pension in July 2012."  (Id. ¶ 185.)  The school board, however, "failed to forward the paperwork until his contract was terminated almost [six] months later."  (Id.)

The EEOC issued Plaintiff a right-to-sue letter on June 27, 2012.  (Id. at 55.)  On September 7, 2012, Plaintiff filed a complaint against Defendants in the Court of Common Pleas of York County, Pennsylvania.  (Doc. No. 1-1.)  Defendants removed the action to this Court on October 10, 2012.  (Doc. No. 1.)  Thereafter, Plaintiff amended his complaint twice, filing the second amended complaint on December 24, 2012.  (Doc. No. 18.)  Defendants filed a motion to dismiss on January 7, 2013.  (Doc. No. 20.)

## II.      STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In reviewing a motion to dismiss, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum, 361 F.3d at 221 n.3.  The motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  The burden is on the moving party to show that no claim has been stated.  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist."  Kost, 1

F.3d at 183 (citations omitted). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Indeed, the United States Supreme Court has held that although the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of an entitlement to relief . . . . [F]actual allegations must be enough to raise a right to relief above the speculative level.'" Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

## III.    DISCUSSION

Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951, et seq., and Pennsylvania law. Defendants move to dismiss his complaint in its entirety, contending that Plaintiff has failed to exhaust his administrative remedies and to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A.    Exhaustion

Defendants argue that the claims asserted in Counts I, II, IV, V, and VII should be dismissed because Plaintiff failed to exhaust his administrative remedies with respect to those claims. Prior to filing a Title VII suit in federal court, a plaintiff must exhaust his administrative remedies by filing a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997); Waiters v. Parsons, 729 F.2d

233, 237 (3d Cir. 1984). Once a plaintiff has exhausted his administrative remedies, he may

only raise Title VII claims in federal court that are within the scope of the original EEOC

charge.[3] Waiters, 729 F.2d at 237; Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996). To

determine whether a plaintiff has exhausted his administrative remedies with respect to a specific

claim, the court must evaluate "whether the acts alleged in the subsequent suit are fairly within

the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol, 82 F.3d

at 1295. Claims are within the scope of the original charge if "they arise during the pendency of

the EEOC investigation, are closely related to conduct alleged in the charge, or are explanations

of the original charge." Waiters, 729 F.2d at 234; see also Anjelino v. N.Y. Times Co., 200 F.3d

73, 94 (3d Cir. 1999) (explaining that the "parameters of a civil action in the District Court are

defined by the scope of the EEOC investigation which can reasonably be expected to grow out of

the charge of discrimination, including new acts which occurred during the pendency of

proceedings before the Commission.").

Plaintiff filed his amended EEOC charge on January 24, 2011, complaining that: he was

suspended for five days with pay on June 18, 2010 after he was falsely accused of taking District

property without authorization; Mr. Beard and Mr. Holmes did not discipline Mr. Muldrow for

violating District protocol on January 11, 2011; and these actions were part of a school board

"plan to replace Caucasian administrators with persons of color." (Doc. No. 18 at 47-50.) Given

these were the only incidents cited in Plaintiff's amended EEOC charge, Defendants contend that

the other claims raised in Plaintiff's complaint are not subsumed within the EEOC charge and,

---

[3] For the sake of simplicity, the Court will refer to Plaintiff's administrative charge, which was
dually filed with the EEOC and the PHRC, as the EEOC charge.

thus, have not been exhausted. Specifically, Defendants assert that Plaintiff's claims that Ms. Attwater and Mr. Powell made racist comments during a 2008 session of the school board (Count I), that Mr. Dean retaliated against him in 2009 after he testified against Saleem Kirkland (Count II), that Ms. Penn and Defendant Kirkland pressured him into hiring Mr. Dean in the summer of 2010 (Count IV), that Mr. Beard intimidated him into increasing Mr. Dean's pay in November 2010 (Count V), and that Mr. Dean sent a mass email accusing him of being racist in November 2011 (Count VII) have not been exhausted. In response, Plaintiff argues that these claims are within the scope of his EEOC charge, pointing out that he alleged in the charge that the District's actions were part of "a plan to replace Caucasian administrators with persons of color."

Generally, a plaintiff may raise claims in a Title VII suit not included in his original EEOC charge only where the unraised claims are within the scope of the EEOC charge. See, e.g., Waiters, 729 F.2d at 234. In Waiters, the plaintiff's EEOC charge included a retaliation claim relating to the filing of an informal complaint, but the plaintiff's Title VII action centered on other alleged retaliatory conduct that took place after the filing of the EEOC charge. Id. at 236. The United States Court of Appeals for the Third Circuit recognized that "the allegedly discriminatory officials and acts [were] different" but held that the retaliation claims raised in the Title VII action were within the scope of the EEOC charge because "the core grievance – retaliation – [was] the same." Id. at 238. Similarly, in Albright v. City of Philadelphia, 399 F. Supp. 2d 575, 584-85 (E.D. Pa. 2005), the court held that "continued acts of retaliation following the filing of [the plaintiff's] second EEOC charge [were] within the scope of the first charge" because retaliation was "at the core" of the allegations contained in the EEOC charge. In

contrast, "courts generally have been less sympathetic toward unexhausted allegations that arose prior to the filing of the EEOC complaint as opposed to allegations pertaining to events that occurred after the filing of the EEOC complaint." DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 434 (E.D. Pa. 2007) (emphasis in original); see also Young v. Schl Dist. of Phila., No. 06-cv-4485, 2009 WL 3072534, at *11 (E.D. Pa. Sept. 24, 2009) (finding that unexhausted allegations that took place prior to the filing of the plaintiff's EEOC charge could not be raised in the plaintiff's Title VII action).

In this case, like in Waiters and Albright, Plaintiff's Title VII suit includes claims not raised in the original EEOC charge. Because Plaintiff's EEOC charge's "core grievance" is racial discrimination, however, the charge theoretically encompasses related forms of racial discrimination not identified within it. See Waiters, 729 F.2d at 238. On review, the Court finds that the claim raised in Count VII of Plaintiff's complaint, although not included in his original EEOC charge, nevertheless fall within the scope of the "core grievance" of the charge and, therefore, will not be dismissed for failure to exhaust. The conduct alleged in Count VII, which occurred in November 2011, appears to have occurred during the pendency of the EEOC action because the EEOC did not issue its right-to-sue letter until June 27, 2012.[4] Accordingly, the Court concludes that the claim raised in Count VII is within the scope of Plaintiff's EEOC charge and will not dismiss it for failure to exhaust administrative remedies. See Tourtellotte v. Eli Lilly & Co., No., 2013 WL 1628603, at *6 (E.D. Pa. Apr. 16, 2013) (finding the plaintiff's

---

[4] Based on the exhibits attached to Plaintiff's complaint, it appears that Plaintiff requested a right-to-sue letter before the EEOC completed its investigation of his allegations. (See Doc. No. 18 at 53-55.)

claims concerning conduct that occurred after she filed her EEOC charge was properly exhausted because the conduct occurred before the EEOC issued its right-to-sue letter).

In contrast, the claims raised in Counts I, II, IV, and V of Plaintiff's complaint concern discriminatory acts that occurred before Plaintiff filed his EEOC charge and, thus, could have been included in the charge. Because Plaintiff had the opportunity to include these allegations in his EEOC charge, but failed to do so, the Court concludes that Plaintiff has failed to exhaust these claims. See DeLaCruz, 521 F. Supp. 2d at 434-35 (finding that the plaintiff's claims concerning conduct that occurred prior to the filing of the EEOC charge were not exhausted because they were not within the scope of the charge); Young, 2009 WL 3072534, at *11. Accordingly, the Court will grant Defendants' motion to dismiss Counts I, II, IV, and V.

Defendant Morgan also moves to dismiss Count III on the basis that Plaintiff failed to name him as a respondent in his administrative charge. Indeed, 42 U.S.C. § 2000e-5(f)(1) provides that a civil action may only be brought against the respondents named in the charge. This requirement furthers two purposes: (1) putting the named parties on notice of the allegations; and (2) facilitating voluntary conciliation without resort to litigation. Glus v. G.C. Murphy Co., 562 F.2d 880, 887-88 (3d Cir. 1977). The Third Circuit, however, has recognized an exception to the exhaustion requirement that permits a plaintiff to sue a party not specifically named in the charge "when the unnamed party received notice and when there is a shared commonality of interest with the named party." Schafer v. Bd. of Educ., 903 F.2d 243, 252 (3d Cir. 1990). In Glus, the Third Circuit enumerated four factors that should be considered in determining whether a district court may assert jurisdiction over a party not named in an administrative charge:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and] 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

562 F.2d at 887-88. "This four-prong test is not a mechanical one; no single factor is decisive. Instead each factor should be evaluated in light of the statutory purposes of Title VII and the interests of both parties." Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir. 1980).

Here, the Court finds that, although Plaintiff's EEOC charge contains one allegation concerning Defendant Morgan, none of the Glus factors is satisfied. First, Defendant Morgan served on the District's school board, and, therefore, Plaintiff knew his role and could have named him as a respondent. See Meyers v. Cal. Univ. Of Pa., No. 12-cv-1258, 2013 WL 795059, at *13 (W.D. Pa. Mar. 4, 2013). Second, the interests in obtaining the voluntary conciliation of York City School District, a public school district, and Defendant Morgan, an individual, are not so similar that it was not necessary for Plaintiff to name Defendant Morgan as a respondent in the administrative process; indeed, the allegation concerning Defendant Morgan included in the EEOC charge is not substantially similar to the allegations raised against the District in this action. Id. Third, Defendant Morgan was actually prejudiced by his absence from the administrative process because he was not provided with the opportunity to informally resolve the claims Plaintiff now asserts against him. See Hajzus v. Peters Twp. Schl. Dist., No. 06-cv-1401, 2007 WL 917082, at *3 (W.D. Pa. Apr. 12, 2007) (finding that the individually

named defendants, who were not named in the plaintiff's administrative charge, would be prejudiced if the plaintiff were permitted to raise claims against them in federal court because they had no prior notice of their potential liability).  Finally, Plaintiff does not allege that Defendant Morgan made representations that he should only be contacted through the District. The Court, therefore, concludes that, although Defendant Morgan was briefly mentioned in Plaintiff's EEOC charge, the allegations concerning his conduct were not sufficient to put him on notice of Plaintiff's claims against him.  Accordingly, Plaintiff has not exhausted his administrative remedies with respect to the claim raised Defendant Morgan in Count III, and the Court cannot alternatively assert jurisdiction over Defendant Morgan under Glus.

### B.      Failure to State a Claim

Defendants next argue that Plaintiff fails to allege sufficient facts showing that he is entitled to relief under the pleading standards articulated in Twombly and Iqbal.  The Court will address Plaintiff's claims of race discrimination, hostile work environment, negligent supervision, and respondeat superior in turn.

### 1.      Race Discrimination

Plaintiff brings seven claims of "disparate treatment/racial discrimination" and a claim of hostile work environment under Title VII and the PHRA.  Title VII makes it an "unlawful employment practice" for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race."  42 U.S.C. § 2000e-2(a)(1).  The PHRA mirrors the requirements of Title VII and applies to race discrimination.  Defendants move the Court to dismiss these claims because Plaintiff's allegations fail to show that he is entitled to relief.

To establish a <u>prima facie</u> discrimination claim, a plaintiff must show that he (1) belongs to a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. <u>Makky v. Chertoff</u>, 541 F.3d 205, 214 (3d Cir. 2008). Traditionally, an adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Durham Life Ins. Co. v. Evans</u>, 166 F.3d 139, 152-53 (3d Cir. 1999) (quoting <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998)). The Supreme Court refined this standard in 2006, holding that an employment action may also be considered materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006). Regarding the fourth prong concerning inferences of discrimination, courts should look closely at whether the facts presented show that the plaintiff was treated differently on account of his race. <u>See, e.g.</u>, <u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 798 (3d Cir. 2003). For example, circumstances supporting an inference of race discrimination might exist when non-members of the protected class were treated more favorably than the plaintiff. <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 410-11 (3d Cir. 1999).

The Court finds that Plaintiff has failed to allege facts sufficient to support his claims of race discrimination asserted in Counts I, II, IV, V, and VI. In these counts, Plaintiff claims that: (1) a sub-committee on which he served was accused of being racist; (2) he was retaliated against for testifying against an African-American employee who allegedly stole District property; (3) he was pressured into hiring an African-American for the position of plant operator;

(4) he was pressured into increasing an African-American's salary; and (5) an African-American subordinate was not disciplined for violating District procedures. Assuming <u>arguendo</u> that the allegations in support of these counts show differential treatment giving rise to an inference of discrimination, the Court finds that Plaintiff has failed to sufficiently allege that he suffered an adverse employment action in conjunction with these alleged incidents. Plaintiff makes no allegations indicating that his employment status was substantially changed due to any of the events on which he bases his claims. Notably, he does not allege that he was fired, demoted, reassigned, disciplined, or that he lost benefits due to these events. Moreover, his allegations do not support a showing that he was dissuaded from complaining of discrimination, as he made both formal and informal complaints about unfair treatment. Even viewing the allegations in support of these counts as examples of discriminatory behavior or favoritism towards African-American individuals, Plaintiff still fails to make out that he suffered an adverse employment action. In other words, Plaintiff has failed to link the incidents that he alleges give rise to an inference of discrimination with any adverse employment action. Accordingly, the Court will grant Defendants' motion to dismiss these counts.

With respect to Count III, the Court finds that Plaintiff has sufficiently pleaded an adverse employment action under circumstances giving rise to an inference of discrimination. In Count III, Plaintiff alleges that he was punished more severely for removing District property than was Saleem Kirkland, an African-American employee. Specifically, Plaintiff alleges that although he was cleared of any wrongdoing, a letter of reprimand was placed in his personnel file. Conversely, no such letter was placed in Mr. Kirkland's personnel file despite the fact that Mr. Kirkland was found to have removed District property without authorization. (Doc. No. 18

¶¶ 50-54.)  Defendants contend that this claim must fail because Plaintiff concedes in his brief in opposition that "Saleem Kirkland . . . [was] supposed to be supervised by Plaintiff" and, therefore, was not a similarly situated employee.  (Doc. No. 24 at 11; Doc. No. 27 at 9.)  In support, Plaintiff points to Amfosakyi v. Frito Lay, Inc., 496 F. App'x 218, 225 (3d Cir. 2012), in which the Third Circuit held that a plaintiff, to prove disparate treatment, "must show that a comparator employee was similarly situated to him in all relevant respects."  In response, Plaintiff avers that he and Mr. Kirkland were similarly situated employees because they were both under the direction of the school board with respect to raises, promotions, and discipline. (Doc. No. 24 at 11-12.)  At this juncture, the Court finds these allegations to be sufficient to show that he and Mr. Kirkland were similarly situated.  Accordingly, the Court will not dismiss Count III for failure to state a claim upon which relief can be granted.

Regarding Count VII, the Court also finds that Plaintiff makes out a Title VII claim because he sufficiently alleges that he suffered an adverse employment action under circumstances giving rise to an inference of discrimination.  Plaintiff alleges that the school board unfairly targeted him after Mr. Dean sent a mass email accusing him of being a racist. Specifically, he alleges that, although Mr. Dean was suspended for ten days without pay for sending the email, the District "followed through on investigating the claims sent to the entire email list . . . and attacked Plaintiff as if he were the wrongdoer rather than punishing Ras Dean who used school property and access to harass, molest and slander another employee."  (Id. ¶ 156.)  The Court finds these allegations to be sufficient to support a claim of race discrimination and, thus, will not dismiss Count VII for failure to state a claim upon which relief can be granted.

### 2.    Hostile Work Environment

In Count IX, Plaintiff asserts a race-based hostile work environment claim against the District under Title VII.  To establish this claim, a plaintiff must show that: "(1) he suffered intentional discrimination because of his [race]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability."  Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001).  When assessing a claim of hostile work environment, courts consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  Isolated incidents and offhand comments, however, do not usually amount to a hostile work environment.  Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).

Defendants first move to dismiss Count IX to the extent that it is based on allegations concerning Plaintiff's pension.  Plaintiff alleges that he "was entitled to his pension in July 2012 and applied for it in July 2012, [but] the board failed to forward the paperwork until his contract was terminated almost 6 months later."  (Doc. No. 18 ¶ 185.)  The Court agrees with Defendants that any claim relating to Plaintiff's pension is not within the scope of his EEOC charge.  As discussed, factual allegations not included in an EEOC charge are nonetheless deemed to be within the scope of the charge if they arise during the pendency of the EEOC investigation or are closely related to the conduct alleged in the charge.  Plaintiff's claim relating to his pension did not arise during the pendency of the EEOC investigation, which necessarily concluded by June

27, 2012, when the EEOC issued Plaintiff a right-to-sue letter.  Neither is the claim closely related to any of the factual incidents raised in the original charge.  Moreover, even if the claim were exhausted, Plaintiff has failed to allege specific facts showing that the school board delayed in awarding him his pension because of his race.  Accordingly, the Court will grant Defendants' motion to dismiss Count IX to the extent it is based on allegations concerning Plaintiff's pension.

The Court, however, will not dismiss Count IX to the extent that it is based on the allegations raised in support of Plaintiff's racial discrimination claims in Counts I-VII, all of which, with the exception of Counts III and VII, are otherwise barred for failure to exhaust or failure to state a claim upon which relief may be granted.  Throughout his complaint, Plaintiff alleges that he complained about instances of discrimination, but Defendants failed to respond to his complaints in a meaningful way.  Further, he alleges that the actions of the District, administrators, and school board members were part of a plan to eliminate Caucasian employees and replace them with African-Americans.  The Court is cognizant of the fact that the claims set forth in Counts I, II, IV, V, and VI have not been exhausted or fail to state independent claims of discrimination under Title VII.  In National Railroad Passenger Corporation v. Morgan, however, the United States Supreme Court noted that even if prior discrete discriminatory acts are not actionable, Title VII does not "bar an employee from using [those] prior acts as background evidence in support of a timely claim."  536 U.S. 101, 113 (2002).  At this juncture, the Court finds that Plaintiff's surviving claims in Counts III and VII, in addition to the allegations raised in the other counts, may be sufficient to make out a claim of hostile work environment. After discovery has been completed, Defendants may be able to demonstrate that Plaintiff cannot prove that those allegations are sufficiently connected to the claims raised in

Counts III and VII to make out a claim of hostile work environment. Plaintiff, however, may be able to show that the allegations are relevant as background evidence. Thus, the Court will not dismiss Count IX.

### 3.    Negligent Supervision

In Count VIII, Plaintiff raises a claim of negligent supervision against the District. In support of this claim, Plaintiff alleges that a "Stoudt report" issued in 2010 stated that Defendant Morgan and Ms. Attwater "acted inappropriately and recommended that procedures for the appropriate reprimands" be implemented. (Id. ¶ 165.) The District, however, failed to reprimand Defendant Morgan or Ms. Attwater. (Id. ¶¶ 166-68.) Plaintiff claims that the District had a duty to train the board members regarding racial harassment, retaliation, and "rogue behavior" and, by failing to do so, created a hostile work environment. (Id. ¶¶ 169-71.)

Defendants contend that the Pennsylvania Political Subdivision Tort Claims Act ("TCA") bars Plaintiff's claim of negligent supervision. (Doc. No. 21 at 10-11.) Under the TCA, local agencies, such as school districts, are immune from liability "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. § 8541. Although the statute permits liability for certain negligent acts, negligent supervision is not one of them. See id. § 8542(a); Byars v. Schl Dist. of Phila., No. 12-cv-121, 2013 WL 1827373, at *4 (E.D. Pa. Apr. 30, 2013).

Plaintiff avers that the District is not entitled to immunity because his claim of negligent supervision falls within the "care, custody or control of personal property" exception to the TCA. Under 42 Pa. Cons. Stat. § 8542(b)(2), a local agency may be held liable for "property losses suffered with respect to the personal property in the possession or control of the local agency."

Because Plaintiff has been entitled to his pension since July 2012, he contends that this exception is applicable, and he "should be afforded the opportunity to do discovery on the specifics of his pension plan in order to see whether the exemption under the immunity clause applies to him." (Doc. No. 24 at 14-15.) This argument is without merit. As Defendants point out, Plaintiff does not reference his alleged entitlement to his pension benefits in Count VIII, his claim of negligent supervision bears no relation to his entitlement to his pension, and he has failed to allege any facts indicating that the school board's delay in awarding him his pension was related to his race. (Doc. No. 27 at 12-13.) Accordingly, the Court finds that the District is entitled to immunity with respect to Count VIII and will grant Defendants' motion to dismiss this count.

### 4. Agency – <u>Respondeat Superior</u>

Finally, Plaintiff raises a claim of "Agency – Respondeat Superior" in Count X. In support of this claim, Plaintiff alleges that the "Individual Defendants and/or unnamed agents committed unlawful violations of the Plaintiffs rights during the course of their employment and during working hours for their employer, York County and the court system, causing emotional harm and distress as well as slandering and/or libeling the Plaintiff following their actions." (<u>Id.</u> ¶ 188.) Defendants contend that this claim is duplicative of Plaintiff's racial discrimination claims, all of which state that the District should "be found liable for its corporate actions and the actions of its agents." In response, Plaintiff argues that he has alleged sufficient facts to state a claim of <u>respondeat superior</u> and cites <u>Giordano v. William Paterson College fo New Jersey</u>, 804 F. Supp. 637 (D.N.J. 1992), and <u>Baker v. Boeing Helicopters</u>, No. C1-cv-3565, 2004 WL 1490358 (E.D. Pa. June 30, 2004), in support. The plaintiffs in <u>Giordano</u> and <u>Baker</u>, however, did not advance independent <u>respondeat superior</u> claims. Rather, as Plaintiff does here, they

advanced claims of hostile work environment, one element of which is the existence of respondeat superior liability.  See Baker, 2004 WL 1490358, at *3-*4; Giordano, 804 F. Supp. at 642-43.  Because Plaintiff raises a claim of hostile work environment against the District in Count IX, the Court finds Plaintiff's respondeat superior claim asserted in Count X to be duplicative and, therefore, will grant Defendants' motion to dismiss it.

## IV.    CONCLUSION

Upon review of Plaintiff's second amended complaint, the exhibits attached thereto, and the parties' briefs relating to Defendants' motion to dismiss, the Court finds that Plaintiff has failed to exhaust his administrative remedies with respect to the claims set forth in Counts I, II, IV, and V as well as with respect to Counts VIII and IX to the extent they seek to hold the York City School District liable for failing to remit his pension funds.  Moreover, the Court concludes that Plaintiff has failed to sufficiently allege facts showing that he was subject to discrimination based on his race in violation of Title VII and the PHRA in Counts I, II, IV, V, and VI or that the District should be held vicariously liable, as alleged in Count X.  Plaintiff, however, has sufficiently pleaded allegations to support his racial discrimination claims under Title VII and the PHRA in Counts III and VII as well as his claim of hostile work environment in Count IX, except to the extent that Count III is raised against Defendant Morgan and to the extent that Count IX is based on the District's failure to remit his pension funds.  An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

BRADLEY HARMAN,                          :
    **Plaintiff**                            :
                                             :   **No. 1:12-cv-02033**
    **v.**                                   :
                                             :   **(Chief Judge Kane)**
YORK CITY SCHOOL DISTRICT, <u>et al.</u>,  :
    **Defendants**                           :

<u>**ORDER**</u>

**AND NOW**, on this 24th day of June 2013, **IT IS HEREBY ORDERED THAT**

Defendants' motion to dismiss (Doc. No. 20) is **GRANTED IN PART** and **DENIED IN PART**

as follows:

1.    The motion is **GRANTED** to the extent that it seeks to dismiss Counts I, II, IV, V, VI, VIII, and X;

2.    The motion is **GRANTED** to the extent that it seeks to dismiss the allegations raised against Defendant Morgan in Count III, and the motion is **DENIED** to the extent that it seeks to dismiss the allegations raised against the York City School District in Count III;

3.    The motion is **DENIED** to the extent it seeks to dismiss Count VII;

4.    The motion is **DENIED** with respect to Count IX except to the extent it is based on Defendant York City School District's alleged delay in remitting Plaintiff's pension funds; and

5.    The Clerk of Court is directed to **TERMINATE** Defendants James Morgan and Jeffrey Kirkland from this action.

**IT IS FURTHER ORDERED THAT** Defendants' motion to dismiss Plaintiff's first amended

complaint (Doc. No. 7) is **DENIED AS MOOT**, and Plaintiff is not granted further leave to

amend his complaint.  A case management conference will be conducted on July 15, 2013 at

1:30 p.m.  Plaintiff's counsel shall initiate this telephone conference.  The telephone number of

the Court is 717-221-3990.

          S/ Yvette Kane

Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania